

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN, TEXAS 78711

WAGGONER CARR
ATTORNEY GENERAL

March 5, 1963

*Overrules WW-1382*
*and WW-1428*
*Where Conflicts*

Mr. Harvey Davis
Executive Director
Texas State Soil Conservation Board
1012 First National Bank Building
Temple, Texas

Opinion No. C-26

Re: Whether counties may legal-
ly expend Permanent Improve-
ment Funds under the pro-
visions of Article 1109k,
V.C.S., for the five named
purposes.

Dear Mr. Davis:

You have requested the opinion of this office as
to whether, under the provisions of Article 1109k, Vernon's
Civil Statutes, counties may legally expend County Permanent
Improvement Funds for the following purposes:

"1. To enter into and carry out contracts
with Soil Conservation Districts for
the joint acquisition of rights-of-way
or joint construction or maintenance of
dams, flood detention structures, canals,
drains, levees and other permanent im-
provements for flood control and drain-
age as related to flood control, and for
making the necessary outlets and maintain-
ing them.

"2. If the answer to Item Number One is in the
affirmative, is it necessary for a Soil
Conservation District to hold joint title
to the rights-of-way with the County in-
volved.

"3. To contribute funds to Soil Conservation
Districts for construction or maintenance
of canals, dams, flood detention struc-
tures, drains, levees and other permanent
improvements for flood control and drain-
age as related to flood control and for

-104-

making the necessary outlets and maintaining them regardless of whether the title to such properties is vested in a County, or a Soil Conservation District so long as the work to be accomplished is for the mutual benefit of the County and the agency or political subdivision having title to such property on which the improvements are located.

"4. To enlarge structures or dams to provide conservation storage for municipal, industrial, or recreational water supplies.

"5. To pay legal and other costs of contract administration for works of improvement as listed above."

Articles 1109k, 7048a and 7048b, Vernon's Civil Statutes, provide the means whereby county governments may enter into contracts with soil conservation districts for the accomplishment of various conservation and flood control measures. Article 7048a authorizes the establishment of a special county fund known as the Flood Control Fund, such fund to be supplied with monies from a voter-approved ad valorem tax. Article 1109k authorizes the use of County Permanent Improvement Fund monies in the furtherance of soil conservation and flood control projects. The occasion for the present opinion request is the apparent confusion that has arisen concerning the utilization of Permanent Improvement Fund monies in carrying out certain statutorily – authorized conservation and flood control measures.

Attorney General's Opinion No. WW-1428 (1962) held that Article 1109k, Vernon's Civil Statutes, was constitutional. That holding is concurred in. The opinion further held, however, that the expenditures authorized by Article 1109k must be strictly limited to "permanent improvements" as such. It held that the County Permanent Improvement Fund could not be utilized, notwithstanding the authority granted by Article 1109k, for such matters as obtaining right-of-ways, payment of the various legal expenses involved in major construction, maintenance of structures already erected, or contract administration.

Article 1109k was passed by the Legislature as an emergency measure in 1959. At that time the Legislature must be presumed to have had before it every court decision and

Attorney General's opinion relied upon in WW-1428, i.e.,
Carroll v. Williams, 109 Tex. 155, 202 S.W. 504 (1918),
Attorney General's Opinions Nos. O-37 (1939), O-629
(1939), O-5422 (1943), and WW-596 (1959).  The cited
opinions of the Attorney General interpreted the uses
that could be made of the County Permanent Improvement
Fund, in the light of the Texas Constitution, and certain
specific statutes.  The statutes there under consideration
differed greatly from that at issue here.  Article 1109k
had not been enacted at the time the cited opinions were
issued.  The Carroll case, supra, dealt with the specific
problem of the transfer of monies between the various con-
stitutional funds.  The case goes deeply into the nature of
the constitutional funds, and has been a landmark in pro-
viding guidelines for their operation.  To quote from
Carroll, at page 506:

> "  . . . By necessary implication said
> provisions of section 9 of article 8 /Texas
> Constitution/ were designed, not merely to
> limit the tax rate for certain therein desig-
> nated purposes, but to require that any and
> all money raised by taxation for any such
> purpose shall be applied faithfully, to that
> particular purpose, as needed therefor, and
> not to any other purpose or use whatsoever.
> . . ."

It is this quotation that was relied upon in WW-1428 for
the proposition that the County Permanent Improvement Fund
could be used for no purpose other than the permanent im-
provements themselves.  In order to support this view, one
would have to believe that a permanent improvement could be
constructed in a vacuum.  Before a shovel of earth can be
turned for a building, a road or a dam, there are expenses
of obtaining right-of-ways, legal fees, permits, etc.  A
contract must be let for the construction, and there are
costs attendant upon the proper administration of that
contract.  Once the building or facility is constructed,
there are recurring maintenance costs that must be met, or
decay will cause the loss of all that has been accomplish-
ed.  If WW-1428 is correct, and none of these costs can be
met from the Permanent Improvement Fund, then we are at a
loss in determining how to meet them.

We are not convinced that the Carroll case forbids the
expenditure of money from the Permanent Improvement Fund for
the classes of costs discussed above, for the reason that
these costs are directly occasioned by the permanent improve-
ment being erected.  It is the view of this office that these

costs are in fact a part of the permanent improvement itself, and cannot be effectively separated therefrom. If further support were needed for this conclusion, it can be found in the fact that, with all the prior court decisions and Attorney General opinions before it, the Texas Legislature enacted Article 1109k, giving to the county governments the authority to enter into contracts which bind them to spend Permanent Improvement Fund monies upon conservation and flood control projects, including therein the power to do all things necessary to the erection of such projects. Where the Legislature has determined that such expenditures are a proper use of the Permanent Improvement Fund, strong authority would be necessary to overturn that determination. Such authority is not present, and the determination must stand.

With regard to the specific questions asked, the answers are as follows:

1. Counties may legally expend County Permanent Improvement Fund monies for these purposes.

2. The terms of the statute, Article 1109k, require the county and the Soil Conservation District to hold joint title to right-of-ways, if such right-of-ways are acquired as part of the contract involved.

3. This question is phrased in the terms of the statute, and the statute has already been held valid.

4. This question departs from the statute, in that there is no authority granted in Article 1109k for the purposes envisioned in this question. A county has only those powers or duties that are clearly set forth in the Constitution and statutes, and the powers granted to counties are strictly construed. Canales v. Laughlin, 147 Tex. 169, 214 S.W.2d 451 (1948). There is no statutory authorization for a county to legally expend Permanent Improvement Funds to enlarge structures or dams to provide conservation storage for municipal, industrial, or recreational water supplies. The answer to this question must be in the negative.

5. Inasmuch as legal fees and costs of contract administration for works of improvement are considered to be part and parcel of the work itself, these costs are payable from County Permanent Improvement Funds.

The two previously issued opinions which have dealt generally with the problem here involved, WW-1382 (1962) and WW-1428 (1962) are hereby overruled to the extent of

their conflict with the opinions expressed herein.

## SUMMARY

The expenditure of County Permanent Improvement Funds authorized by Article 1109k, V.C.S., is constitutional. Further, there is no constitutional prohibition against the payment of expenses incidental to the construction and maintenance of permanent improvements, such payment to be made from the County Permanent Improvement Fund pursuant to the authority of Article 1109k.

Attorney General's Opinions Nos. WW-1382 (1962) and WW-1428 (1962) are hereby overruled insofar as they conflict with the opinions expressed herein.

Yours very truly,

WAGGONER CARR
Attorney General of Texas

By *Malcolm L. Quick*

Malcolm L. Quick
Assistant

MLQ:ms

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

V. F. Taylor
Arthur Sandlin
J. C. Davis
Joseph Trimble

APPROVED FOR THE ATTORNEY GENERAL
By:  Stanton Stone