

# THE ATTORNEY GENERAL
# OF TEXAS

June 2, 1987

JIM MATTOX
ATTORNEY GENERAL

Honorable Gary Garrison
Ector County Attorney
Courthouse, Room 218
Odessa, Texas    79761

Opinion No. JM-716

Re: Whether a commissioners court may grant federal revenue sharing funds to a chamber of commerce for use in recruiting new businesses

Dear Mr. Garrison:

You ask whether Ector County may donate federal revenue sharing funds to the Greater Odessa Chamber of Commerce to be used to recruit new business to the area.

The Revenue Sharing Act, which was codified as chapter 67 of title 31 of the United States Code, was repealed as part of the Consolidated Omnibus Budget Reconciliation Act of 1985, Pub. L. No. 99-272, §14001, 100 Stat. 327 (1986). The legislation repealing the act provided in part:

> Amounts paid to units of general local government from the Trust Fund shall be used, obligated, or appropriated by the units of general local government before October 1, 1987, and shall continue to be subject to the terms of the Revenue Sharing Act.

Pub. L. 99-272, §14001(a)(5), 100 Stat. 327, 328 (1986). Thus, the repealed provisions of the Revenue Sharing Act still govern the use of any revenue sharing money available to Ector County.

The Revenue Sharing Act provided, at 31 U.S.C. section 6704, that a county could not spend revenue sharing funds unless it was acting within its authority under state law:

> (a) Under regulations of the Secretary of the Treasury, a State government or unit of general local government qualifies for payment under this chapter for an entitlement period only after establishing to the satisfaction of the Secretary that --

. . . .

> (3) the government will expend the payments received under the laws and procedures applicable to the expenditure of revenues of the government.

Article III, section 52, of the Texas Constitution prohibits a county from donating funds to a private association or corporation:

> (a) Except as otherwise provided by this section, the Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever, or to become a stockholder in such corporation, association or company.

That provision does not prevent counties from contracting with private corporations. Attorney General Opinion JM-65 (1983). Rather, it requires that a county contract with a private corporation serve a public purpose and that the county receive adequate consideration. Attorney General Opinion MW-373 (1981). Furthermore, a county contract with a private corporation must provide sufficient assurance that the public purposes will be accomplished. Id.; Attorney General Opinion H-912 (1976). As indicated, article III, section 52, applies to revenue sharing funds as well as other county funds. See Attorney General Opinion Nos. MW-329 (1981) (county may not contribute federal revenue sharing funds to a nonprofit corporation organized for the purpose of training handicapped adults); H-1189 (1978) (county may not make unconditional grant of federal revenue sharing funds to private daycare); H-1010 (1977) (under certain circumstances, county may loan federal revenue sharing funds to a medical student in exchange for promise that student will provide certain services to county); H-127 (1973) (county may use federal revenue sharing funds to contract with a private entity to provide a recreation facility for the aged).

This office has stated that paying dues to a private corporation such as a chamber of commerce in order to secure "general benefits resulting from encouragement of private industry and business" is not sufficiently "insulated from the abuses" that article III, section 52, was designed to prevent. Attorney General Opinion H-397 (1974). In contrast, this office has held that a county may contract with a private corporation for specific business and industrial development services as long as the county receives adequate consideration and the contract provides adequate assurance that the public purpose will be accomplished. Attorney General Opinion JM-516 (1986); see also

Canales v. Laughlin, 214 S.W.2d 451 (Tex. 1948) (county has only those powers conferred upon it specifically or by necessary implication).

Some of the information you submitted to us suggests that Ector County would simply be donating money to the Greater Odessa Chamber of Commerce to support the chamber's current efforts to recruit business. Such a donation, unaccompanied by specific contractual provisions to insure that the county would receive adequate consideration and that the public purpose would be met, would be impermissible. Attorney General Opinion H-397 (1974).

## S U M M A R Y

A county may contract with a private corporation such as a chamber of commerce for the provision of business and industrial development services if the county receives adequate consideration and if the contract provides adequate assurance that the public purpose will be accomplished. A county may not, however, simply donate money to a chamber of commerce.

Very truly yours,

J I M   M A T T O X
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Sarah Woelk
Assistant Attorney General